THE OCEAN GROVE CAMP MEETING ASSOCIATION OF THE METHODIST EPISCOPAL CHURCH AND THE NEW YORK AND LONG BRANCH RAILROAD COMPANY, PROSECUTORS, v. THE BOARD OF PUBLIC UTILITY COMMISSIONERS AND THE CITY OF ASBURY PARK.

Submitted December 7, 1911—Decided February 26, 1912.

1. Where property is granted to a railroad company for railroad purposes, subject to a reversion to the grantor upon the violation of a condition at the option of the grantee, and it happens that the grantee is required by law to default, thus causing the land to revert, such reversion alone will not prevent condemnation proceedings for the subsequent acquisition of the land by the former grantee for railroad purposes.

2. An order of the board of public utility commissioners requiring a railroad company to stop such trains as are run on Sundays at a given station is not void as being in conflict with the Vice and Immorality act, for it does not require the running of trains on Sunday, but simply compels such as are run to serve the public without discrimination.

On *certiorari*.

Before Justices GARRISON, PARKER and BERGEN.

For the camp meeting association, *Patterson & Rhome* and *Gilbert Collins.*

For the New York and Long Branch Railroad Company, *George Holmes.*

For Asbury Park, *James D. Carton.*

The opinion of the court was delivered by

BERGEN, J.   The city of Asbury Park, in the county of Monmouth, in this state, applied to the board of public utility commissioners for an order requiring the railroad companies, operating trains over the New York and Long Branch railroad through Asbury Park, to stop their trains, passing through that city on Sunday, at the main station in Asbury Park.   To this petition the New York and Long Branch Railroad Company filed an answer setting up that it had entered into certain agreements with the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church subjecting itself to all the regulations of said association "then or thereafter made, especially the regulation prohibiting the stopping of trains, locomotives, cars or other vehicles used in the transportation of passengers or freight at any point between a point three hundred and fifty feet southerly from the southerly end of the defendant's North Asbury Park station, and another point two and one-quarter miles southerly on defendant's railroad * * * on the first day of the week commonly called Sunday." It also avers that this agreement is subject to a proviso that if at any time the railroad company "shall deem it necessary to stop its trains nearer to Ocean Grove than the limits of the aforesaid points north and south, that then certain property rights assured to the defendant railroad under such agreement should revert to" the camp meeting association.

The Central Railroad Company of New Jersey and the Pennsylvania Railroad Company, as well as the Ocean Grove Camp Meeting Association were heard by the board of public utility commissioners, and, after the taking of testimony and argument, the board of commissioners made an order that the respective railroad companies hereafter stop their passenger trains on Sunday at the main station in Asbury Park in the same manner as at other stations of similar importance on the line of said road.   It is admitted that the main station referred to is within the limit prohibited by the agreement between the camp meeting association and the New York and Long Branch Railroad Company above referred to, and that

if the order is obeyed it will be in violation thereof. The Ocean Grove Camp Meeting Association and the New York and Long Branch Railroad Company have procured the allowance of this writ to review the foregoing order.

The principal, and in fact the only argument pressed on behalf of the railroad company, is that to obey the order in disregard of its contract will work a reversion of property rights, but this it has the right to do under its contract, and the only question is whether it can be required, against its will, to do an act which will result in a reversion of property necessary for railroad uses. . If the property rights can be condemned for railroad purposes then the violation of the contract simply imposes on the company the expense of acquiring property it now holds without cost so long as no trains are stopped on Sunday for the accommodation of the public. We think that such expense is not a controlling factor, and that if the company undertakes to run trains on Sunday, inviting the public to use them, the convenience of the passengers is a duty paramount to the expense of producing that result. It is, however, urged that the company having already agreed with the landowner, it cannot, on reversion, take the same property by condemnation, because it cannot truthfully say that it is unable to agree with the landowner. This argument is not sound, for once the land reverts there is no longer any agreement as to price, each party stands as if there had been no contract, and they are in position to negotiate for sale and purchase, and the question of agreement as to price is an open one. Where property is granted to a railroad company for railroad purposes, subject to a reversion to the grantor upon the violation of a condition at the option of the grantee, and it happens that the grantee is required by law to default, thus causing the land to revert, such reversion alone will not prevent condemnation proceedings for the subsequent acquisition of the land by the former grantee for railroad purposes.

The camp meeting association rests its objection upon the Vice and Immorality act, which forbids the running of more than one train a day on Sunday, but this order does not compel the running of any trains on Sundays. It simply orders

that if trains are run on Sunday no discrimination shall be made between stations of similar importance, in the matter of stopping trains. It is not the stopping of trains at any given station that is forbidden, but the running of trains, and that this order does not direct. If the company runs but one train on Sunday an order that it stop at the main station in Asbury Park would hardly be questioned, and if more trains are run on Sunday than the law permits, that can be dealt with in a proper proceeding having that object in view.

The order complained of is, not that trains must be run, but that such trains as are run shall stop at the main station in Asbury Park.

The order under review is affirmed.